WITHERS BERGMAN LLP
Dean R. Nicyper
Joseph Gallo
430 Park Avenue
New York, New York 10022
Telephone: (212) 848-9800
*Attorneys for Plaintiff Perry Margouleff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PERRY MARGOULEFF,

                Plaintiff,

    -against-

JEFF BECK,

                Defendant.
-------------------------------------------------------------------X

No: _____

**COMPLAINT**

Plaintiff Perry Margouleff ("Plaintiff" or "Margouleff") through his attorneys, Withers Bergman LLP, as for his Complaint against Defendant Jeff Beck ("Defendant" or "Beck"), alleges on knowledge with respect to himself and his own conduct and on information and belief as to all other matters as follows:

### NATURE OF ACTION

1. This case involves a 1959 Gibson "Les Paul" guitar (the "Guitar"), which Plaintiff Margouleff purchased in the ordinary course of business, in good faith, and for full market value in 2000 from a seller Plaintiff knew (the "Seller").

2. At the time of sale, the Seller disclosed to Plaintiff that the Guitar had previously belonged to Defendant Beck. Upon information and belief, the Seller had contacted Beck some time prior to selling it to Plaintiff, and offered to gift the Guitar to Beck for no money. Further upon information and belief, Beck responded to the Seller stating he did not want the Guitar.

Beck thereby knowingly and intentionally abandoned, waived, and relinquished any right, title, and interest that he might have had (if any) in the Guitar.

3. Plaintiff was a friend and colleague of Beck's. Therefore, prior to buying the Guitar, Plaintiff also contacted Beck to tell Beck the Guitar was available and that Plaintiff was interested in buying it. Beck responded that he was not interested in the Guitar and had no objection to Plaintiff's buying it. Beck thereby again knowingly and intentionally abandoned, waived, and relinquished any right, title, and interest he might have had (if any) in the Guitar.

4. Since the date of Plaintiff's purchase of the Guitar, Plaintiff has owned and has been in continuous possession of the Guitar.

5. Decades after he knowingly abandoned and waived any rights he might have had in the Guitar (if any), Defendant Beck, through his manager, asserted to Plaintiff on January 11, 2018 that he owns the Guitar and wants it. Since then, representatives of Beck have repeated that Beck now wants possession of the Guitar from Plaintiff.

6. Plaintiff, who bought the Guitar in good faith, now seeks a declaratory judgment quieting title to the Guitar and confirming that Plaintiff Margouleff, and not Defendant Beck, is the rightful owner of the Guitar.

## THE PARTIES

7. Plaintiff Perry Margouleff is an individual residing at 18 Hammond Road, Glen Cove, New York.

8. Upon information and belief, Defendant Jeff Beck is an individual residing at 14 Hereford Mansions, London, W2 5BA, England.

## JURISDICTION AND VENUE

9.   4.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). Plaintiff Perry Margouleff is a citizen of the state of New York, and Defendant Jeff Beck is a citizen or subject of the United Kingdom. The amount in controversy exceeds the value of $75,000.

10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3).

## FACTUAL BACKGROUND

A.   Plaintiff's Relationship with Defendant

11.   Plaintiff Perry Margouleff is a musician, engineer, producer, vintage guitar collector, and vintage guitar dealer. Plaintiff has worked with and bought and sold guitars from numerous artists, including Eric Clapton, Jimmy Page, Keith Richards, Pete Townsend, and Jeff Beck, to name a few.

12.   Jeff Beck is a well-known guitarist who has performed internationally since the mid-1960s. Upon information and belief, Beck knowingly abandoned, relinquished, and waived any rights he had to the Guitar in 1969.

13.   Plaintiff Margouleff met Beck on or around June 1, 1983, at Ron Wood's birthday party in New York. Margouleff and Beck began a personal and professional relationship in which Margouleff, for instance, helped Beck to locate and purchase certain guitars and assisted in the recording of music.

14.   For years after their initial meeting, Margouleff and Beck remained in friendly contact.

B.   Plaintiff's Purchase of the Guitar

15.   In 1999, a friend of Plaintiff's (the "Seller") contacted Plaintiff regarding an offer to sell part of the Seller's guitar collection. Shortly thereafter, Plaintiff traveled to the Seller's home and inspected and purchased several guitars.

16.   During his visit to the Seller's home, Plaintiff noticed the Guitar at issue in this Complaint, and Plaintiff inquired about purchasing it. The Seller informed Plaintiff that the Guitar was not available for sale at that time.

17.   Approximately one year after Plaintiff's visit to the Seller's home, the Seller again contacted Plaintiff offering to sell some more of his collection, this time including the Guitar.

18.   The Seller told Plaintiff that he believed that the Guitar had previously belonged to Defendant Beck, but he was unsure how Beck had come to part with the Guitar. Because Plaintiff was friendly with Beck and wanted to be sure Beck was not interested in re-acquiring the Guitar, Plaintiff contacted Beck to see if Beck had any interest in the Guitar or, if instead, Beck had any objection to Plaintiff purchasing it from the Seller.

19.   Plaintiff called Beck's then-manager, Ralph Baker, who put Plaintiff on the phone with Beck. Plaintiff told Beck that he was interested in buying the Guitar from the Seller and asked Beck what he thought about the transaction. Beck asked how much money the Seller was asking for the Guitar. When Plaintiff told him, Beck said that Plaintiff could buy a '32 Highboy car for that much money. Beck then told Plaintiff that he gave Plaintiff his blessing to buy the Guitar. Plaintiff offered to let Beck use the Guitar from time to time if he so desired. Beck responded that he did not play Les Paul guitars.

20.   Plaintiff therefore agreed to, and did, buy the Guitar from the Seller.

4

21. On November 6, 2000, Plaintiff paid the Seller $75,000 for the Guitar. Upon information and belief, the Guitar's market value has since increased to significantly more than $75,000.

22. A few days after Plaintiff paid for and purchased the Guitar, Baker called Plaintiff to again discuss the Guitar. When Plaintiff told Baker that he had purchased the Guitar, Baker said don't worry about it.

C.  Beck's Claim to Ownership of the Guitar

23. On January 11, 2018, Beck's manager, Colin Newman, sent an email stating that Beck was claiming the Guitar had been stolen from him and he wanted it. Defendant Beck now alleges that the Guitar was stolen from Beck at a show at Tamarack Lodge in Ellenville, New York in July 1969 while the band was being rushed out of the show by their manager. Upon information and belief, based on other accounts of that event, Beck knowingly and intentionally abandoned any right, title, and interest he had in the Guitar in relation to that event at or about that time.

24. Now, after discussions to try to resolve this new dispute over ownership of the Guitar have failed, Plaintiff files this lawsuit.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201)**

25. Plaintiff Margouleff repeats and realleges each and every allegation contained in Paragraphs 1 through 24 as if fully set forth herein.

26. Based on the Seller's representation that Beck previously owned the Guitar, Plaintiff contacted Beck prior to Plaintiff's purchase of the Guitar and asked him if he had any problem with Plaintiff's purchasing the Guitar. Although he was on notice of the transaction, Beck did not make any claim to the Guitar before or during the time of the sale. To the contrary,

5

Defendant Beck expressly gave his blessing to Plaintiff in 2000 to purchase the Guitar. Plaintiff therefore understood and believed at the time that the Seller had the right and ability to sell, and to convey good title to, the Guitar.

27. Plaintiff paid full market value to the Seller for the Guitar in November 2000 and took possession of the Guitar soon after. Plaintiff purchased the Guitar in good faith, and has been its rightful owner since he purchased it in 2000.

28. Beck now claims that he is the owner of the Guitar.

29. Beck's claim is belied by his previous contrary statements and his abandonment, waiver, and relinquishment of any claim he might have had to the Guitar. Beck's claim is also barred by the applicable statutes of limitations and the doctrine of laches. Notwithstanding the lack of merit of Beck's recent assertion of a claim, Beck's statements that he now wants possession of the Guitar and will proceed to "recover" it has created a ripe and justiciable controversy regarding who is the rightful owner of the Guitar.

30. Accordingly, Plaintiff Margouleff respectfully requests that the Court issue a declaratory judgment quieting title to the Guitar and ruling that Plaintiff, not Beck, is the rightful owner and title holder of the Guitar.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Perry Margouleff respectfully requests judgment against Defendant Jeff Beck as follows:

(a) A declaration that Plaintiff Margouleff, not Beck, is the rightful owner of, and title holder to, the Guitar;

(b) An award to Plaintiff of his costs, disbursements, and fees in this action; and

(c)     For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       August 14, 2018

                                                WITHERS BERGMAN LLP

By: _____
Dean R. Nicyper
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9815
Dean.Nicyper@WithersWorldwide.com
Joseph.Gallo@WithersWorldwide.com
*Attorneys for Plaintiff Perry Margouleff*