USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/23/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PERRY MARGOULEFF,

                Plaintiff,

    v.

JEFF BECK,

                Defendant.

No. 18-CV-7334 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Perry Margouleff seeks a declaratory judgment against Defendant Jeff Beck, requesting that this Court declare him the rightful owner and title holder of a guitar that he purchased in 2000. Beck has moved for dismissal of this action for lack of personal jurisdiction. The Court agrees with Beck that the Court does not have personal jurisdiction over him pursuant to New York's long-arm statute. But the Court concludes that an evidentiary hearing is necessary to determine whether Defendant was served in New York in a manner that can subject him to personal jurisdiction here.

## BACKGROUND

Plaintiff Perry Margouleff, who resides in Glen Cove, New York, is a musician, engineer, producer, and a collector and dealer in vintage guitars. *See* Compl., Dkt. 1, at 2 ¶ 7, 3 ¶ 11. Defendant Jeff Beck, who resides in London, England, is a well-known guitarist who has performed since the mid-1960s. *See id.* at 2 ¶ 8, 3 ¶ 12.

Plaintiff states that he and Beck first met at a mutual friend's birthday party in or around June 1, 1983, and have kept in touch ever since. *See id.* at 3 ¶¶ 13, 14. Sometime in 2000, Plaintiff was contacted by an unidentified guitar seller (the "Seller"), who offered to sell him a

Les Paul guitar that this individual told him had previously belonged to Beck, although he "was unsure how Beck had come to part with the Guitar." *Id.* at 4 ¶¶ 17-18. Plaintiff, who "wanted to be sure Beck was not interested in re-acquiring the Guitar," asserts that he then contacted Beck, and asked "what he thought about the [prospective] transaction." *Id.* ¶ 19. In response, Beck allegedly gave Margouleff "his blessing to buy the Guitar." *Id.* On November 6, 2000, Plaintiff purchased the guitar from the Seller for $75,000. *See id.* at 5 ¶ 21. Shortly thereafter, Margouleff informed Beck's then-manager, Ralph Baker, of the sale, and Baker, according to Plaintiff, told him not to "worry about it." *Id.* ¶ 22.

On January 11, 2018, over seventeen years after the guitar's purchase, Margouleff received an email from Beck's latest manager, Colin Newman, who asserted that the guitar had been stolen and that Beck wanted it back. *See id.* ¶ 23. Specifically, Newman stated that, in July 1969, the guitar had been taken from Beck by an unidentified individual at a show at the Tamarack Lodge in Ellenville, New York, while the band was rushed off of the stage by a former manager. *See id.* Plaintiff responded that he had legally purchased the guitar, and therefore held rightful title to it. *See id.* This was followed by various telephone conversations between the parties' lawyers, none of which yielded a successful resolution concerning the instrument's ownership. *See id.* ¶ 24; Dkt. 12 at 1-2.

## PROCEDURAL HISTORY

On August 14, 2018, Plaintiff filed an action for declaratory judgment before this Court pursuant to 28 U.S.C. § 2201. *See* Dkt. 1. According to Margouleff, Beck has made clear through his lawyers that he will claim legal ownership of the guitar, and, as a result, Plaintiff seeks a decision "quieting title to the Guitar and ruling that Plaintiff, not Beck, is the rightful owner and title holder" of the instrument. *Id.* at 6 ¶¶ 29, 30.

On August 24, 2018, Plaintiff filed a return of service with the Court. Dkt. 6. This affidavit was completed by Plaintiff's process carrier, Linda Benedetto, who asserts that she served process on Beck at a concert venue in Port Chester, New York, on August 15, 2018. *See id.* Specifically, Benedetto's affidavit states that, after viewing Beck come out of his tour bus, she positioned herself behind a security officer, who was "right behind" Beck, and called out that she was a process server "there to serve [him with] a Summons and Complaint." *Id.* Benedetto then allegedly followed Beck as he entered the "stage door," "tossed the documents to his feet," and announced that he had been served. *Id.* According to the affidavit, Beck continued walking away from her, at which point security "closed the door and called the police." *Id.*

On September 24, 2018, Defendant's counsel filed a letter to the Court stating that "Beck does not wish to litigate this dispute in New York, where he has no residence, and where the litigation will be more costly for him." Dkt. 12 at 2. In the letter, Beck's counsel also stated that Benedetto's affidavit was contradicted by "sworn witness testimony and security video footage" making clear that service was not properly effectuated on him. *Id.* Nevertheless, Beck's counsel informed the Court that it was "willing to accept service of the Complaint" on Beck's behalf, provided that Plaintiff agreed that this did not constitute a waiver of Defendant's objection to personal jurisdiction in New York. *Id.* On October 12, 2018, the parties agreed to this stipulation. *See* Dkt. 19.

On October 25, 2018, Defendant filed a motion to dismiss this case for lack of personal jurisdiction. Dkt. 20. First, Beck maintains that he was not properly served by Benedetto. *See* Def.'s Br. at 9. In support of this argument, Beck provides video footage of Benedetto's supposed service on him, *see* Dkt. 25, as well as an affidavit from Beck's tour manager, Christian Fenn, stating that neither he nor Beck were aware that Benedetto had attempted to

3

serve Beck with process, *see* Dkt 24. Second, Beck contends that he did not engage in any business transaction in New York giving rise to Plaintiff's claim for declaratory judgment, and this Court thus has no personal jurisdiction over him on that basis. *See* Def.'s Br. at 12.

Plaintiff responded on November 15, 2018. Dkt. 28. In his opposition, Plaintiff contends that Beck was properly served, *see* Pl.'s Opp. at 5-6, and provides a supplemental declaration from Benedetto, Dkt. 30. In her declaration, Benedetto states: (1) that she was "approximately 10 to 15 feet behind Defendant for the entire duration of his walk between the bus and the door into the venue," Dkt. 30 at 3 ¶ 13; (2) besides her initial announcement that she was a process server and "there to serve a summons on Jeff Beck," *id.* ¶ 12, Benedetto shouted approximately ten additional times that she was there to serve Defendant, *id.* ¶ 14; and (3) that the sidewalk was quiet, and her voice was "audible to Defendant and everyone else in the vicinity," *id.* Benedetto also asserts that, after Beck entered the "door into the [concert] venue," she threw the summons and complaint "into the door after [him]" and yelled that he had been "drop served." *Id.* ¶ 16.

Moreover, Plaintiff argues that this Court has personal jurisdiction over Beck pursuant to New York's long-arm statute because he chose to avail himself of the protections of New York by performing in Ellenville, New York in 1969, where he lost the guitar at issue. *See* Pl.'s Opp. at 5, 8-12.

## STANDARD OF REVIEW

A motion to dismiss must be granted when a court lacks personal jurisdiction over a defendant. *See, e.g., John Wiley & Sons, Inc. v. Trekarabenjakul*, No. 09 Civ. 2108 (CM), 2009 WL 1766003, at *3 (S.D.N.Y. June 18, 2009); *see* Fed. R. Civ. P. 12(b)(2). "To establish personal jurisdiction over a defendant due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of

4

jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F. 3d 659, 673 (2d Cir. 2013). Personal service upon an individual within the jurisdiction of the court also constitutes a valid basis for the assertion of personal jurisdiction. *See Weiss v. Glemp*, 792 F. Supp. 215, 224 (S.D.N.Y. 1992) (citing *Burnham v. Superior Court of Cal.*, 495 U.S. 604 (1990)).

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F. 3d 81, 84 (2d Cir. 2013) (internal quotation marks omitted) (brackets omitted). "Where a court has chosen not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 425 F. 3d 158, 165 (2d Cir. 2005) (internal quotation marks omitted) (brackets omitted). "In evaluating whether the requisite showing has been made, [courts] construe the pleadings and supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, S.A.L.*, 732 F. 3d 161, 167 (2d Cir. 2013). "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrylser North Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

## DISCUSSION

### I. Personal Jurisdiction Pursuant to CPLR §§ 302(a)(1) and (2)

In assessing personal jurisdiction, federal courts look first to the so-called "long-arm statute of the forum state," in this instance, New York's Civil Practice Law and Rules (the

5

"CPLR"). *Bensusan Rest. Corp. v. King*, 126 F. 3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statue, the court must then decide whether such exercise comports with the requisites of due process." *Id.*

Plaintiff first argues that this Court has personal jurisdiction over Beck pursuant to §§ 302(a)(1) and (2) of the CPLR. *See* Pl.'s Opp. at 8-12.

Under § 302(a)(1) of the CPLR, two requirements must be met to assert personal jurisdiction over an individual: "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Barret v. Tema Dev. (1988), Inc.*, 251 F. App'x 698, 700 (2d Cir. 2007) (internal quotation marks omitted). With respect to the first requirement, "[a] foreign party 'transacts business' in New York when, looking at the totality of the circumstances, he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *Hill v. HSBC Bank*, 207 F. Supp. 3d 333, 338 (S.D.N.Y. 2016) (internal quotation marks omitted). With respect to the second requirement, "New York courts have held that a claim aris[es] from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Best Van Lines v. Walker*, 490 F. 3d 239, 249 (2d Cir. 2007) (internal quotation marks omitted).

In support of his argument that this Court has personal jurisdiction over Beck under § 302(a)(1), Plaintiff asserts that Defendant "purposefully availed himself of the benefits and protections of New York law" and subjected himself to personal jurisdiction in this forum by performing at a show in New York in which the guitar was stolen. Pl.'s Op. at 9. In other words, according to Plaintiff, "[b]ecause Beck claims the Guitar was stolen from him during his

6

performance at a concert in New York, Beck's claim to the Guitar arises from Beck's transaction of business in New York." *Id.* at 10.

The Court disagrees. As Plaintiff makes clear in his complaint, his suit for declaratory judgment arises not from Beck's performance at a 1969 concert in New York, but from Margouleff's 2000 purchase of the guitar. *See* Compl. at 1 ¶ 1 ("This case involves a 1959 Gibson 'Les Paul' guitar, which Plaintiff Margouleff purchased in the ordinary course of business, in good faith, and for full market value in 2000 from a seller Plaintiff knew."); 2 ¶ 6 ("Plaintiff, who bought the Guitar in good faith, now seeks a declaratory judgment quieting title to the Guitar and confirming that Plaintiff Margouleff, and not Defendant Beck, is the rightful owner of the Guitar."). The purchase of the guitar did not involve Beck, but was made between Margouleff and the unidentified Seller. Moreover, Plaintiff does not allege that he bought the guitar in New York, or that any transaction related to this sale occurred in the state.[1]

Plaintiff is correct that Beck appears to be contending, in support of his argument that Margouleff could not have legally purchased the guitar, that the instrument was stolen. *See* Dkt. 12 at 1-2. But the fact that Beck's guitar was stolen in this state is, by itself, far from sufficient to satisfy personal jurisdiction over him. For a defendant to be subject to personal jurisdiction in New York under § 302(a)(1), "there must have been some *purposeful* activities within the State that would justify bringing the nondomiciliary defendant before the New York courts." *SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y. 3d 400, 404 (2012) (emphasis added); *see, e.g., Fischbarg v. Doucet*, 9 N.Y. 3d 375, 380 (2007) (Purposeful activities "are

---

[1] Although Plaintiff allegedly exchanged emails about the guitar's ownership from his home in New York with Beck's manager, such communications, even had they involved Beck himself, would be insufficient to confer personal jurisdiction on Defendant. *See, e.g., Beacon Enters., Inc. v. Menzies*, 715 F. 3d 757, 766 (2d Cir. 1983) ("New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.").

7

those with which a defendant, *through volitional acts*, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (emphasis added). Being the victim of theft does not constitute a purposeful or volitional act on one's part.

Nor does Plaintiff successfully argue that, even if Beck has not subjected himself to personal jurisdiction in New York pursuant to § 302(a)(1) of the CPLR, he has done so with respect to § 302(a)(2). Under § 302(a)(2), a court may exercise personal jurisdiction over a non-domiciliary if the non-domiciliary "commits a tortious act within the state." As with § 302(a)(1), to obtain personal jurisdiction over a defendant in New York pursuant to § 302(a)(2), the plaintiff "must demonstrate that there is a sufficient nexus between the defendant's contacts [with the state] and the plaintiff's cause of action." *Doe v. City of N.Y.*, 583 F. Supp. 2d 444, 447 (S.D.N.Y. 2008).

In support of his argument that Beck is subject to personal jurisdiction in New York under § 302(a)(2), Margouleff relies on a videotaped interview of Beck's drummer, Tony Newman. *See* Pl.'s Opp. at 11. In this interview, Newman stated that Beck shot a fire extinguisher into the crowd at the Ellenville concert, which injured an audience member and started a riot. *See id.* at 12. In turn, this led the band to be "ushered" off the stage, which resulted in Defendant leaving his guitar behind, followed by its subsequent theft. *Id.* From this, Plaintiff concludes that "the loss of the guitar in Ellenville, New York, arose out of Beck's tortious act in New York," and thereby subjected him to personal jurisdiction under § 302(a)(2). *Id.*

This argument is meritless. First, in his Complaint, Plaintiff nowhere makes mention of any tortious act committed by Beck. *See, e.g., Alliance Network, LLC v. Sidley Austin LLP*, 987

8

N.Y.S 2d 794, 809 (N.Y. Sup. Ct. 2014) ("Such an exercise of jurisdiction ... requires, *inter alia*, the pleading of a tortious act."). In any event, as stated above, the instant claim arose from Plaintiff's purchase of the guitar in 2000, *not* Defendant's decision to play at a show in Ellenville four decades ago, nor an allegedly tortious act that Beck may have committed at that concert. Moreover, the only case that Plaintiff cites in support of his argument, *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.*, 779 F. Supp. 335 (S.D.N.Y. 1991), is inapposite. In *Guardala*, a trademark/copyright infringement case, the plaintiff alleged that the defendants had illicitly copied the appearance and design of a saxophone mouthpiece and then shipped this item to customers in New York. *See id.* at 336. The court concluded that, because the defendants had "offered the allegedly offending [] mouthpiece for sale in the State of New York," it had personal jurisdiction over them pursuant to § 302(a)(2). *Id.* at 338. Here, unlike in *Guardala*, the plaintiff is not suing the defendant for the tortious conduct itself. Rather, Margouleff is seeking entitlement to an item that he alleges Defendant abandoned, and indirectly ascribes the abandonment of this item to a potential tort on Beck's part against someone who has nothing to do with this case.

Accordingly, Plaintiff has not established personal jurisdiction over Defendant pursuant to New York's long-arm statute under either CPRL §§ 302(a)(1) or 302(a)(2).[2]

---

[2] In a footnote, Plaintiff also contends that "[t]he location of the Guitar in New York itself creates a basis for jurisdiction in New York" pursuant to 28 U.S.C § 1655. Pl.'s Opp. at 19 n.7. The Court again disagrees. Section 1655 governs *in rem* jurisdiction over property, not personal jurisdiction with respect to people. *See Levitt v. F.B.I.*, 70 F. Supp. 2d 346, 351 (S.D.N.Y. 1999) ("Levitt is confusing *in personam* jurisdiction and *in rem* jurisdiction. A federal court, in the proper circumstances, may adjudicate ownership of property in *in rem* actions. But that is quite a different matter from having personal jurisdiction over an absent claimant."). Here, Plaintiff has brought no action *in rem* under § 1655.

## II. Personal Jurisdiction Based on Service of Process

Plaintiff also contends that, even if Beck is not subject to personal jurisdiction under New York's long-arm statute, he is subject to personal jurisdiction in New York because he was properly served with process in the state.

Federal Rule of Civil Procedure 4(e)(2) "specifically authorizes personal service of a summons and complaint upon an individual physically present within a judicial district of the United States, and such personal service comports with the requirements of due process for the assertion of personal jurisdiction." *Kadic v. Karadzic*, 70 F. 3d 232, 247 (2d Cir. 1995). In New York, CPLR § 308(1) provides that "[p]ersonal service upon a natural person shall be made ... by delivering the summons within the state to the person to be served." Such service "must be clear and unequivocal so that a reasonable defendant knows he or she has been served with process." *Weiss v. Glemp*, 792 F. Supp. 215, 224 (S.D.N.Y. 1992). "New York courts have interpreted the delivery requirement of § 308 strictly." *Id.* at 224. Consequently, the requirement that the summons and complaint be delivered "to the person to be served has been applied in accordance with its plain and literal language." *Dorfman v. Leidner*, 76 N.Y.2d 956, 957 (1990) (internal quotation marks omitted).

That said, "[w]here defendants actively resist service, New York courts have allowed some flexibility in the actual delivery of service under the subsections of CPLR § 308." *Ingenito v. Riri USA, Inc.*, No. 11-CV-2569 (CBA), 2011 WL 4056078, at *4 (E.D.N.Y. Aug. 9, 2011) (internal quotation marks omitted). Specifically, "where the person to be served is himself clearly attempting to resist or evade service," the summons may be "left in close proximity to the person to be served or near the door which the person to be served refused to open." *Prof'l Billing Res., Inc. v. Haddad*, 183 Misc. 2d 829, 832 (N.Y.C. Civ. Ct. 2000) (internal citations

omitted) (collecting cases); *Melkaz Int'l Inc. v. Flavor Innovation Inc.*, 167 F.R.D. 634, 642 n.6 (E.D.N.Y. 1996) ("[U]nder CPLR § 308(1), delivery of a summons and complaint may be accomplished by leaving it in the general vicinity of a person who resists service.") (internal quotation marks omitted).

Plaintiff asserts that his process carrier, Lisa Benedetto, properly effectuated service on Beck by leaving the summons and complaint in his general proximity after he refused service. In support of this argument, Plaintiff cites to Benedetto's affidavits, where she claims to have come within ten to fifteen feet of Beck and his associates on a quiet sidewalk, and called out to him multiple times "that [she] was there to serve legal documents on [him]," to which he ignored her. Dkt. 30; *see also* Dkt. 6. *See* Dkt. 30 at 3 ¶ 15 ("Based upon my [thirty years of] experience as a process server, I believed then, and still believe now, that Defendant was intentionally resisting my efforts to serve him."). To properly effectuate service, Benedetto states that she therefore followed Beck to his stage door, threw the papers within his general vicinity (approximately five feet behind him), and announced that he had been served. *See id.* at 4 ¶ 20. Specifically, Plaintiff contends that the sequence of events in this case "mirrors" that in *Doe v. Karadzic*, 93 Civ. 0878 (PKL), 93 Civ. 1163 (PKL), 1996 WL 194298 (S.D.N.Y. Apr. 22, 1996), where the court concluded that a defendant properly received service when, after ignoring a process carrier, the papers were dropped in his vicinity as he walked away. *See* Pl.'s Opp. at 14.

In response, Defendant relies on two items: (1) an affidavit by Beck's tour manager, Christian Fenn, who was present when Benedetto supposedly served Defendant, and (2) three separate surveillance videos of the alleged service of process. According to Fenn's affidavit, he and Beck did not ignore Benedetto; rather, they had no idea that she had tried to make contact with them. *See* Dkt. 24 at 2 ¶ 6; *see id.* ¶ 8 (stating that he and Beck did not encounter

11

Benedetto when they left the bus, "did not see or hear her at any time during the walk from the bus to the stage door," and "did not know that she had thrown papers on the ground after we passed through the stage door").

With respect to the surveillance videos, Defendant contends that these videos show Benedetto was not just behind Beck, as she asserted in her affidavits, but "approximately 15 feet behind [Defendant] the entire time, with two people (Fenn and a security guard) clearly in between them." Def.'s Br. at 12. Moreover, Beck asserts that these videos show neither Beck nor Finn flinched in response to Benedetto's supposed shouts, which, he argues, would have been a natural reaction even had they sought to ignore her. *See* Def.'s Reply at 6. Finally, Beck states that the third surveillance video directly refutes Benedetto's claim in her original affidavit that the papers landed at Defendant's feet, or in close proximity to him, as he entered the door to the venue. *See* Def.'s Br. at 12. Instead, according to Beck, this video makes clear that he and Finn "had already passed through the entry and were on the way to the stage area by the time that the papers land[ed]," and he would thus not have known that Benedetto was attempting to serve the papers on him. *Id.*

"In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F. 3d 54, 57 (2d Cir. 2002). "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing," or what is known in New York as a "traverse hearing." *Id.*

In this case, as detailed above, Plaintiff has filed a sworn affidavit of service, as well as a supplemental affidavit containing a detailed description of the purported service of process at issue. Although Defendant's counsel has provided a sworn rebuttal from a person who was with

12

Beck when he was supposedly served, he provides no affidavit from Beck himself. Generally, "[i]n order to rebut an affidavit of service and test the process at a traverse hearing, a defendant must *personally* contest the service on motion." *Walkes v. Benoit*, 257 A.D. 2d 508 (N.Y. App. 1st Dep't 1999) (emphasis added); *see also De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) ("A defendant's affidavit denying service rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing, *only where the defendant* swears to specific facts to rebut the statements in the process server's affidavits.") (emphasis added) (internal quotation marks omitted) (brackets omitted).

Nevertheless, courts "have 'considerable procedural leeway' in deciding how to address allegations of improper service and may conduct an evidentiary hearing even without a sworn denial." *United States Flour Corp. v. Certified Bakery*, No. 10-CV-2522 (JS)(WDW), 2012 WL 728227, at *3 (S.D.N.Y. March 6, 2012) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F. 2d 899, 904 (2d Cir. 1981)) (emphasis omitted). Ultimately, "[u]nder New York law a traverse hearing is required where there exists a genuine issue of fact of whether service was properly made." *Id.* at *3 (internal quotation marks omitted).

In this case, the Court concludes that a traverse hearing is necessary because there are disputed facts with respect to whether Beck was properly served.

First, it is unclear from the parties' materials alone whether Beck actually resisted service. As stated above, Beck has not submitted an affidavit asserting that he was not aware he was being served. Nor do the surveillance videos settle the matter. In the first video, Benedetto can be seen within ten to fifteen feet of Defendant. *See* Video 1, Stage Door 2 South. Although she cannot be seen shouting at Beck or his associates, it is unclear whether she did so, and

13

whether he became aware of her presence. *See id.* This is because the video has no audio, and shows only part of Benedetto's attempt to serve Defendant.

Second, there is a dispute whether Beck was aware that Benedetto dropped the summons and complaint in his presence. The relevant video appears to contradict Benedetto's statement in her original affidavit that she left the summons and complaint by Beck's "feet [at] the stage door." Video 3, Back Stair. Rather, based on this footage, it is clear that Beck walked through the door, and Benedetto then threw the papers a few feet behind him. *See id.* As before, however, the video lacks audio, and the Court cannot tell whether Benedetto shouted loud enough for Beck to have heard that she had "drop served" him.

Finally, the Court does not agree with Plaintiff that Benedetto's service "mirror[ed] that in *Doe v. Karadzic.*" Pl.'s Opp. at 14. In *Karadzic,* a process carrier approached the defendant with a summons and complaint. *See Karadzic,* 1996 WL 194298, at *2. The defendant's security detail knocked these papers to the ground, and the process server thus "left them in the vicinity of the defendant as he walked away." *Id.* The service carrier, while being held by the defendant's security detail, then clearly shouted to the defendant that he was attempting to serve legal papers on him. *See id.*

In this case, for the reasons described above, it is not evident that Benedetto "clearly apprised [Beck] that [s]he was attempting to serve legal papers," or that her words were "clearly audible" to him. *Id.* Unlike the process server in *Karadzic,* Benedetto only approached Beck from behind, nor was there any scuffle that might have alerted him to her presence. Moreover, as explained earlier, it is contested whether Defendant was indeed aware that the papers had been placed in close proximity to him.

14

Accordingly, the Court finds that a traverse hearing is necessary to resolve the disputed facts at issue here. At this hearing, Plaintiff will be required to demonstrate personal jurisdiction by a preponderance of the evidence. *Dorchester*, 722 F. 3d at 86 (If the district court is to conduct an evidentiary hearing on the merits of a motion for lack of personal jurisdiction, it is the plaintiff's "burden to establish jurisdiction by a preponderance of the evidence"). If Plaintiff is unable to do, the Court will dismiss this case for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has not established personal jurisdiction over Beck in this forum pursuant to CPLR §§ 302(a)(1) or (2). Whether Plaintiff sufficiently served process on Defendant and thereby subjected him to personal jurisdiction in New York is a closer question, however, and requires an evidentiary hearing.

By July 31, 2019, the parties shall meet and confer, and inform the Court what dates in August or September they are available for an evidentiary hearing with respect to whether Defendant was properly served in New York.

SO ORDERED.

Dated: July 23, 2019
New York, New York

Ronnie Abrams
United States District Judge

15